IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ERICA LYNN C.,

        Plaintiff,

   v.                                                                          Civil Action No.
                                                                                      5:20-CV-0394 (DEP)

ANDREW SAUL, Commissioner of Social
 Security,

        Defendant.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR PLAINTIFF | |
| LEGAL AID SOCIETY<br>221 South Warren Street<br>Syracuse, NY 13202 | ELIZABETH V. LOMBARDI, ESQ. |
| FOR DEFENDANT | |
| SOCIAL SECURITY ADMIN.<br>625 JFK Building<br>15 New Sudbury St<br>Boston, MA 02203 | JESSICA RICHARDS, ESQ. |

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(3)(c), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on May 19, 2021, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

    2)    The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

    3)    The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:    May 27, 2021
            Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ERICA L. C.,

                         Plaintiff,

vs.                                          5:20-cv-394

ANDREW SAUL, Commissioner
Social Security Administration,

                         Defendant.

------------------------------------------------------------x
```

*Transcript of DECISION* held on May 19, 2021

the HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding

APPEARANCES (by telephone)

| | |
|---|---|
| For Plaintiff: | LEGAL AID SOCIETY<br>221 South Warren Street<br>Syracuse, New York 13202<br>  BY:  ELIZABETH VICTORIA LOMBARDI, ESQ. |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>15 New Sudbury Street<br>Boston, MA 02203<br>  BY:  JESSICA RICHARDS, ESQ. |

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1          THE COURT:  Let me begin by thanking both counsel
2  for excellent presentations.  I've enjoyed working with you
3  on this matter.
4          I have before me a challenge to an adverse
5  determination by the Commissioner of Social Security finding
6  that plaintiff was not disabled at the relevant times and,
7  therefore, ineligible for the benefits she sought.  The
8  challenge is raised under 42, United States Code, Sections
9  405(g) and 1383(c)(3).
10         The background is as follows.  Plaintiff was born
11 in August of 1978.  She is currently 42 years old.  She was
12 34 years of age at the alleged onset of her disability on
13 October 24, 2012, and 37 at the time of her application for
14 benefits on May 23, 2016.  Plaintiff stands approximately
15 5-foot, 5-inches in height and weighs approximately
16 245 pounds.
17         The record is ambiguous as to the extent of the
18 plaintiff's education.  At page 826 it suggests she has a
19 10th grade education; at page 304, a 7th grade education; and
20 at 60, a 9th grade education.  It's clear that she was in
21 regular classes while in school and did not achieve a GED.
22         Plaintiff is divorced.  She has three children who
23 reside with their father.  Plaintiff lives in Carthage,
24 New York, in an apartment with her boyfriend and brother.
25 She does not drive, nor does she use public transportation.

1           Plaintiff's work history is also somewhat
2  ambiguous.  She worked as a hotel housekeeper for several
3  years.  She told Dr. Noia that she left that position when
4  she was hit by a car.  From 2008 until 2011 she was a home
5  aide and cleaner for her father and her father's friend, her
6  father being a quadriplegic.  Her father died in 2011.  She
7  stated she could not go back to work and did not look for
8  work after that; page 62 of the Administrative Transcript.
9           Plaintiff suffers from some physical conditions,
10 including diabetes mellitus, which is medically controlled;
11 chronic obstructive pulmonary disease, or COPD; right knee
12 pain; obesity; she claims Crohn's Disease; she suffers from
13 hypertension and a heart issue.
14          Mentally, plaintiff has experienced various issues
15 that have been at different times diagnosed or categorized as
16 post-traumatic stress disorder, or PTSD; panic disorder;
17 major depressive disorder without psychotic features; anxiety
18 disorder; substance and alcohol abuse history, including
19 cannabis abuse; and agoraphobia with panic disorder.
20          Some of the stressors that she has experienced in
21 her lifetime include the death of her father from a seizure
22 disorder, that's at 826, and her mother's suicide within
23 three weeks thereafter based on an overdose.  She also
24 witnessed in 2014 her brother overdosing and committing
25 suicide.

1              Plaintiff was taken to the emergency room on
2   June 21, 2017, after having taken 15 Klonopin pills.  She was
3   admitted to the hospital and resided there from that day
4   until June 29, 2017.  The record is somewhat unclear as to
5   whether that was a suicide attempt.  She denied having tried
6   to commit suicide at both the emergency room, at 345 of the
7   Administrative Transcript, and later in the hospital, at 423.
8              Plaintiff has had a series of primary providers;
9   Dr. Patel, who she was not happy with, his treatment notes do
10  not appear in the record; Dr. Jocelyn Beane, who she began
11  seeing in August of 2016; and Dr. Daniel Krebs, who she began
12  treating with in February of 2018.
13             For her mental health needs, she treats at the
14  Carthage Area Behavioral Health Center.  She sees Physician
15  Assistant, or PA, Caleb Richter, and LMSW Kenneth Alcom.  She
16  was evaluated initially January 2016, at 237 and following in
17  the Administrative Transcript.  The plaintiff actually began
18  treating there, according to some of the records, in
19  September of 2015.  Plaintiff was discharged from that
20  treatment center based on attendance issues in July of 2018,
21  at 792, but was later reinstated in the fall of 2018.  That's
22  at 825 of the Administrative Transcript.
23             Plaintiff has been prescribed various medications
24  over time, including Prazosin, Hydroxyzine, Celexa,
25  Bupropion, Ventolin, Lyrica, Buspirone, Propranolol, Topamax,

1  Omeprazole, Gabapentin, Klonopin, Lisinopril and Rozerem.
2          In terms of activities of daily living, plaintiff
3  is able to dress, bathe, groom, cook, clean, do laundry,
4  shop, read.  She likes poetry and she likes Greek mythology.
5          Plaintiff is a former smoker and an occasional
6  marijuana user.  There is evidence that she abused alcohol in
7  the past.  There is also some indication in the records of
8  drug seeking conduct.
9          Procedurally, plaintiff applied for Title XVI
10 Supplemental Security Income benefits on May 23, 2016.  As
11 the Commissioner notes, that was her third such application.
12 In it she alleged an onset date of October 24, 2012, and
13 claimed disability based on PTSD, ADD, diabetes, bipolar
14 disorder, agoraphobia, COPD, Crohn's disease, congestive
15 heart failure, and high blood pressure.
16         A hearing was conducted on August 8, 2018, by
17 Administrative Law Judge Elizabeth Koennecke to address
18 plaintiff's claim for benefits.  A supplemental hearing with
19 a vocational expert was conducted on February 5, 2019.  On
20 February 12, 2019, ALJ Koennecke issued an unfavorable
21 decision which contained a final determination of the
22 Commissioner on February 26, 2020, when the Social Security
23 Administration Appeals Council denied plaintiff's request for
24 review.  This action was commenced on April 2, 2020, and is
25 timely.

1             In her decision ALJ Koennecke applied the familiar
2    five-step sequential test for determining disability.
3             She noted at step one that plaintiff had not
4    engaged in substantial gainful activity since the date of her
5    application.
6             At step two, she concluded that plaintiff does
7    suffer from impairments that impose more than minimal
8    limitations on her ability to perform basic work functions.
9    They were characterized at page 12 of the Administrative
10   Transcript as, "all mental impairments as variously
11   characterized."
12            At step three, ALJ Koennecke concluded that
13   plaintiff's conditions do not meet or medically equal any of
14   the listed presumptively disabling conditions set forth in
15   the Commissioner's regulations, specifically considering
16   listings 12.04, 12.06, 12.08 and 12.15.  The ALJ next
17   determined that notwithstanding her impairments, plaintiff
18   retains the residual functional capacity, or RFC, to perform
19   medium work with some additional limitations addressing her
20   mental conditions and the resulting functional limitations.
21            At step four, the ALJ concluded that plaintiff is
22   incapable of performing her past relevant work.
23            At step five, she noted initially that if plaintiff
24   was capable of performing a full range of medium work, a
25   finding of no disability would be required by the

Medical-Vocational Guidelines, or Grids, and specifically Grid Rule 203.26, relying on the testimony of the vocational expert and based upon the additional non-exertional limitations that erode the job base on which the Grids are predicated.  The ALJ, nonetheless, concluded that plaintiff is capable of performing work available in the national economy, and cited three representative occupations as order picker, salvage laborer, and laundry laborer.  And, therefore, concluded that plaintiff was not disabled at the relevant times.

As you know, the Court's function in this case is limited to determining whether correct legal principles were applied and the resulting determination is supported by substantial evidence, which is defined as such relevant evidence as a reasonable mind would conclude sufficient to support a finding.

The Second Circuit has noted in *Brault versus Social Security Administration Commissioner*, 683 F.3d 443 (2d. Cir. 2012), that this is an extremely deferential standard; it is even more rigorous than the clearly erroneous standard that lawyers are familiar with.  Under the standard, once an ALJ finds a fact, that fact can be rejected only if a reasonable factfinder would have to conclude otherwise.

The plaintiff in this case has raised potentially two arguments; one alleging that improper weight was given to

Case 5:20-cv-00394-DEP   Document 16   Filed 05/27/21   Page 11 of 18

8

1   medical opinions, including those opinions of Dr. Dennis
2   Noia, a consultative examiner; Physician Assistant Richter
3   and LMSW Alcom; and Dr. Hennessey, a state agency consultant.
4   The second argument is that the Administrative Law Judge
5   failed to mention and properly evaluate the diagnosis of
6   fibromyalgia and its effect on plaintiff's ability to perform
7   work functions.
8          Turning first to the weight of the medical
9   evidence, this case, of course, is governed by the prior
10  regulations that were in effect until March of 2017.  Under
11  20 CFR Section 404.1527, any medical opinion given must be
12  evaluated, medical opinion being defined as an opinion given
13  by an acceptable medical source.  In this case we have no
14  opinions from any treating sources that qualify as acceptable
15  medical sources, so the treating source rule, of course, does
16  not apply.
17         We do have an opinion from Dr. Noia.  It is dated
18  May 8, 2018.  The written evaluation appears at 304 to 308 of
19  the Administrative Transcript.  The check-box form that
20  summarizes the findings appears at 310 through 312.  The
21  finding of Dr. Noia is that plaintiff suffers from no
22  limitations in certain areas, mild limitations in certain
23  areas, moderate limitations in interacting adequately with
24  supervisors, co-workers and the public, and marked
25  limitations in regulating emotions, controlling behavior, and

1   maintaining well-being.
2          The findings of Dr. Noia are discussed in fairly
3   significant detail at page 13 and again 16 of the
4   Administrative Transcript.  During the Administrative Law
5   Judge's decision it is given significant weight.  Admittedly,
6   the ALJ did not adopt all of Dr. Noia's limitations, some of
7   which do not appear to translate directly into work
8   functions, like marked limitations and controlling behavior,
9   regulating emotions, maintaining well-being.  There is, of
10  course, no requirement that the RFC finding track in toto any
11  one medical opinion.
12         The Administrative Law Judge concluded that some of
13  the limitations are not supported by Dr. Noia's exam.  He
14  cited an October 9, 2018, counseling note at page 828 of the
15  Administrative Transcript that shows normal functioning, and
16  he cited the activities of daily living that the plaintiff
17  experiences.
18         In my view, the residual functional capacity
19  finding of ALJ Koennecke does accommodate many, if not most,
20  of the limitations expressed there, including the limitation
21  that she not have any contact with the general public.
22  Dr. Noia's limitation on the ability to maintain a schedule
23  is acknowledged at page 13 of the Administrative Transcript,
24  and an explanation is given at page 16 as to why it is not a
25  limitation set forth in the residual functional capacity

1   finding.  Again, the ALJ cites mostly normal exams, the
2   ability to maintain a schedule of appointments, and the fact
3   that from the record it appears that any missed appointments
4   that led to the termination of the treatment relationship at
5   Carthage Behavioral came as a result of unreliable
6   transportation, rather than plaintiff's inability to bring
7   herself to go to the doctor.
8          There is some indication of some antisocial
9   behavior, but several of those incidents appear to coincide
10  with periods of intoxication.  For example, there was an
11  incident in the emergency room of a hospital, reported at 918
12  and 919 of the Administrative Transcript, where plaintiff was
13  behaviorally out of control and the police had to be called.
14         It was noted that Dr. Noia's exam showed normal
15  social skills.  It was noted that she meets weekly in her own
16  home with a religious organization group.  She was able to
17  visit Florida, take a trip to Florida.  And that the cycles
18  of improvement and worsening seem to coincide with medication
19  issues.
20         My finding is that the Administrative Law Judge's
21  discussion of Dr. Noia's opinion allows her meaningful
22  judicial review, the resulting residual functional capacity
23  is supported by substantial evidence, and I cannot say that a
24  reasonable factfinder would have to weigh it differently.
25         When it comes to LMSW Alcom and PA Richter, LMSW

1  Alcom gave a December 9, 2016, opinion that appears at pages
2  337 to 340 of the record.  Notably, on the first page it is
3  indicated client is expected to make a full recovery once she
4  is able to process her grief/trauma.  There are some
5  limitations noted, but many of them deal with understanding
6  and remembering complex instructions and carrying out complex
7  instructions, which do not come into play in this case, and
8  interacting appropriately with the public, which, of course,
9  is accommodated in the RFC.
10           LMSW Alcom, of course, is not an acceptable medical
11 source.  The opinion is dealt with in the discussion of ALJ
12 Koennecke and it doesn't vastly differ from the RFC finding.
13 The second is an opinion given by both PA Richter and LMSW
14 Alcom on July 25, 2018.  It appears at 800 to 805.  Once
15 again, it indicates Erica has the capacity to return to
16 normal functioning.  There are some limitations indicated in
17 the areas of none to moderate.  I didn't see any indication
18 of marked limitations.
19           There was a statement that was discussed by the
20 Administrative Law Judge.  The statement is -- well, the
21 question that was responded to is, "Is there ongoing medical
22 treatment, medication, mental health therapy, psychosocial
23 support, or a highly-structured setting that diminishes signs
24 or symptoms?"  At page 804.  The answer is "Yes."  The
25 Administrative Law Judge discussed that statement and it was

Case 5:20-cv-00394-DEP   Document 16   Filed 05/27/21   Page 15 of 18

12

1  rejected at page 15.  The rejection is explained, and I
2  cannot say that a reasonable factfinder would have to
3  conclude otherwise.
4          The opinions of both LMSW Alcom and PA Richter were
5  discussed at page 16 and given some weight.  I find that the
6  explanation is satisfactory and supported by substantial
7  evidence.  Again, I note neither is an acceptable medical
8  source.
9          There was some suggestion that the plaintiff may be
10 making a step three argument that the C criteria could be met
11 in this case.  That argument, in my view, is waived because
12 it was not expressly set out in the plaintiff's brief.
13 Nonetheless, the finding that plaintiff did not experience a
14 highly-structured environment in going to the doctor on a
15 biweekly basis, or a therapist, I should say, is
16 well-supported.  There is also no indication of a marginal
17 adjustment, which is defined in 20 CFR, Part 404, Subpart P,
18 Appendix 1 at 12.00G, especially since LMSW Alcom and PA
19 Richter have given opinions that suggest that plaintiff can
20 make a full recovery and return to normal functioning.
21         The opinion of Dr. Hennessey was considered.  He is
22 a non-examining agency consultant.  His opinions appear at 84
23 through 90.  He is unable to make significant findings or to
24 assess functional limitations, especially since plaintiff
25 apparently did not keep an appointment for a consultative

1    exam.  The RFC finding was more limiting than Dr. Hennessey's
2    opinion, which is certainly proper and I find no error there.
3           Turning to the second argument raised addressing
4    the diagnosis of fibromyalgia.  It is true that it appears
5    that Dr. Krebs did diagnosis or at least list on a couple of
6    occasions a diagnosis of fibromyalgia.  Fibromyalgia, of
7    course, is a somewhat elusive infirmity.  It's addressed in
8    SSR 12-2p.  As the Commissioner argues, the mere diagnosis
9    without more of fibromyalgia is not sufficient to establish a
10   medically determinable impairment.
11          That ruling sets forth two alternative means of
12   diagnosing fibromyalgia.  The first requires a history of
13   widespread pain, at least 11 positive tender points on
14   physical examination, and evidence that other disorders that
15   could cause the symptoms or signs were excluded.
16   Alternatively, it can be established through a history of
17   widespread pain, repeated manifestations of six or more
18   fibromyalgia symptoms, signs, or co-occurring conditions,
19   and, once again, evidence of other disorders that could cause
20   the repeated manifestations were excluded.
21          Plaintiff doesn't argue that the first means have
22   been met.  With regard to the second, the record doesn't
23   establish a history of widespread pain.  It establishes
24   certainly that plaintiff has experienced pain in various
25   locations over time, but those seem to be tied to injuries or

1  in one case arthritis, but there doesn't appear to be any
2  evidence of other disorders that could cause those repeated
3  manifestations of symptoms were also excluded.
4         So I find no error, and if there was error it's
5  harmless error, in failing to discuss fibromyalgia.  I do
6  note that in her functional report plaintiff did not claim
7  disability based on fibromyalgia, and nor was there a claim
8  during her hearing that was one of the causes of her
9  inability to perform work functions.
10         So, in sum, I find that the resulting determination
11  was the product of correct legal principles and is supported
12  by substantial evidence.  I will grant judgment on the
13  pleadings to the defendant and order dismissal of plaintiff's
14  complaint.
15         Once again, thank you both for your presentations
16  and I hope you stay well.
17                *            *            *

C E R T I F I C A T I O N

    I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter